Fairbanks *v.* Williamson.

FAIRBANKS & *al. vs.* WILLIAMSON.

Where one contracted to build a road for the State through four of its townships, in consideration of a contract made by the State's agents to convey to him 8000 acres of land as soon as the road should be completed, the land to be surveyed and laid off in any of the State's lands through which the road might pass ; and afterwards, but before any such survey or conveyance, the party having made the road sold and conveyed an undivided third part of the 8000 acres ;—this was held sufficient to pass the fee ; the land being afterwards designated by a survey agreeably to the contract.

And the deed of the whole tract from the State being afterwards made to the original contractor, it was held to enure to the benefit of his grantee ; and to estop the grantor and all others claiming under him adversely to such prior grantee.

A covenant that neither the grantor nor his heirs shall make any claim to the land conveyed, though not technically a warranty, is a covenant real, which runs with the land, and estops the grantor.   And wherever the grantor is estopped, all claiming under him are estopped also.

The extent of an execution raises an estoppel, as much as if the conveyance were made by deed.

THIS was a writ of entry on the demandant's own seisin, to recover possession of two lots of land in township No. 2 of the old Indian purchase, on the west side of the *Penobscot* river, particularly described by their numbers in the writ.

The title of the demandants was by the regular extent of an execution against *Ebenezer Webster,* upon the premises in question,

made *July* 5, 1827 ; and a deed of release from *Webster* on the 27th day of *August* following.

It appeared that on the 15th day of *December* 1818, one *Ebenezer Weston* made a deed to *Webster*, reciting that the agents of *Massachusetts*, in consideration of a contract entered into by himself and one *Daniel Webster* deceased, to build a certain road, had contracted to sell and convey to them 8000 acres of land, to be by them selected in lots of one hundred acres each, in any of the lands belonging to the Commonwealth in the four townships through which that road might pass ; the same having been first surveyed under the direction of the agents for the sale of eastern lands ; and that their contract to build the road had been completed ; and thereupon conveying to said *Ebenezer Webster*, for a full and valuable consideration, one undivided third part of the 8000 acres ; so that neither the grantor nor his heirs or assigns should or would make any claim or demand to said undivided third part forever ; without other covenants ; and authorising the grantee or his heirs or assigns to select said third part in lots of one hundred acres each, as the grantor might have done. The land was subsequently surveyed as contemplated by the original contracting parties ; and a deed of the whole tract, including the demanded premises, was made to *Weston, June* 13, 1820, by the committee for the sale of eastern lands, in fulfilment of the contract. And on the 10th day of *May* 1821, *Weston* conveyed the demanded premises to the tenant in fee. All the deeds were recorded forthwith, upon their execution and delivery.

Hereupon, at the suggestion of *Parris J.* before whom the cause was tried, a default was entered against the tenant, subject to the opinion of the court upon the question whether the deed from the committee to *Weston* enured to the benefit of *Webster ;* or estopped *Weston* and the tenant from denying the title of the demandant.

*Williamson, pro se,* argued that nothing passed by the deed from *Weston* to *Webster.* The grantor had neither seisin, nor possession, nor the right of possession ; but only a future possibility of an interest. 3 *Bac. Abr.* 382, *Grant, D ;* the fee was in the Commonwealth till *June* 13, 1820 ; and of such lands there can be no disseisin. *Co. Litt.* 265, *a.* 266, *a ;* 5 *Johns.* 489 ; 4 *Dane's Abr*

16, *sec.* 3 ; *Brinley v. Whiting,* 5 *Pick.* 350 ; *Hathorne v. Haynes,* 1 *Greenl.* 247 ; 1 *Bac. Abr.* 446 ; *Davis v. Hayden,* 9 *Mass.* 519.

But the deed itself was too uncertain to operate as a conveyance of land. It contained nothing from which the position or location of the land could be inferred. The tract was to be taken from the Commonwealth's lands through which the road might pass ; and it was to pass through four townships. *Shep. Touchst.* 249, 250. It was nothing but a covenant to convey. But if it was more, it was a grant to take effect *in futuro,* and therefore conveyed nothing. 2 *Chitty's Pl.* 464 ; *Somes v. Brewer,* 2 *Pick.* 197 ; *Co. Litt.* 296 *b.*

Upon these grounds there can be no estoppel. And if there could, yet this would apply only to the parties to the deed. For here was no privity in estate, because no estate passed by the deed. The very ground of estoppels, moreover, which is to prevent circuity of action, fails in this case ; for the grantor entered into no covenants, on which his grantee could found an action. 4 *Com. Dig.* 79 ; 6 *Mass.* 420 ; *Co. Litt.* 271, *a ;* 352, *a.*

*Sprague* and *Starrett,* for the demandant, cited 5 *Dane's Abr. ch.* 160, *art.* 1, *sec.* 16 ; 4 *Dane's Abr. ch.* 110, *art.* 2, *sec.* 4 ; 2 *D. & E.* 171 ; 4 *Com. Dig. Estoppel, A.* 2 ; *Varnum v. Abbot,* 12 *Mass.* 474 ; 2 *Caines,* 188 ; 6 *Mass.* 254 ; *Pray v. Pierce,* 7 *Mass.* 385 ; *Allen v. Sayward,* 5 *Greenl.* 227 ; *Somes v. Skinner,* 3 *Pick.* 52 ; *Mayo v. Libby,* 12 *Mass.* 339 ; *Jackson v. Bull,* 1 *Johns. Ca.* 81 ; *Brown v. Maine Bank,* 11 *Mass.* 153 ; *Jackson v. Murray,* 12 *Johns.* 201 ; *Jackson v. Stevens,* 16 *Mass.* 110 ; *Williams v. Gray,* 3 *Greenl.* 207.

The opinion of the Court was delivered in *Cumberland,* at the adjournment of *May* term, in *August* following, by

WESTON J. It is insisted that the instrument, executed by *Ebenezer Weston* to *Ebenezer Webster,* in *December,* 1818, was not a conveyance of land, but a contract to convey. It has, however, all the formalities necessary by law, for the conveyance of real estate. It was signed, sealed, delivered, acknowledged and recorded ; and contains apt and proper words, to pass an estate in fee

simple. It is sufficiently apparent, that the parties intended it to have that effect; and that no further assurance was in their contemplation. It is further objected, that the deed cannot operate, by reason of uncertainty as to the subject matter of the conveyance. The deed does not describe and set forth the land conveyed by metes and bounds, nor does it designate its exact location. But it points out the mode by which it was to be ascertained; and the tract from which it was to be taken. It was first to be surveyed under the direction of the agent for the sale of eastern lands, or such other person or persons as should be authorized for that purpose; from which the grantee was to select the quantity conveyed, in lots of one hundred acres each. The deed sets forth particularly and definitely, the manner in which the land was to be located. This being followed, certainty as to the subject matter of the conveyance resulted. In *Sheppard's Touchstone*, 250, it is laid down, on the authority of *Perkins*, that if one be seised of two acres of land, and he doth lease them for life, and grant the remainder of one of them, and doth not say of which, to *J. S.* in this case, if *J. S.* makes his election which acre he will have, the grant of the remainder to him will be good. So in the preceding page, it is stated, that if one grant me one hundred loads of wood, to be taken by the assignment of the grantor, or to be taken by the assignment of *J. S.* these are good grants. There must be reasonable certainty as to the subject matter of a grant or conveyance; but this rule of law is satisfied, if the description contains that, from which certainty may be obtained. *Id certum est, quod certum reddi potest.*

At the time of the execution of this deed, the grantor had entitled himself to a conveyance of the land, from the authorized agents of the Commonwealth of *Massachusetts;* but the conveyance was not actually made, and his title thereby perfected, until *June* 1820. And it is contended that nothing passed by *Weston's* deed to *Webster*, he having then no estate or interest in the land. In the deed to *Webster*, *Weston* covenants that neither he nor his heirs, shall or will make any claim to the land conveyed. This, although not technically a warranty, is a covenant real, which runs with the land, and estops the grantor and his heirs to make claim or set up any title

thereto. The fruit and effect of a warranty in deed is, that it con-cludes the warrantor, so that all his present and future rights, that he hath or may have in the land, are thereby extinct. *Shep. Touch.* 181. And this to avoid circuity of action. *Co. Lit.* 265, *a.* That this is the consequence of a deed with warranty, is recognized in *Jackson v. Matsdorf,* 11 *Johns.* 97 ; in *McCrakin v. Wright,* 14 *Johns.* 194 ; in *Mason v. Muncaster,* 9 *Wheat.* 454 ; and in *Somes v. Skinner,* 3 *Pick.* 52. And our opinion is, that it is deducible from the doctrine of estoppels, that wherever the grantor is estopped, all subsequently claiming under him are estopped also. 4 *Com. Dig. Estoppel, E.* 10 ; *Co. Lit.* 352, *a.*

In *Somes v. Skinner,* Parker C. J. says, after reviewing the authorities, " the general principle to be deduced from all these is, that an instrument, which legally creates an estoppel to a party undertaking to convey real estate, he having nothing in the estate at the time of the conveyance, but acquiring a title afterwards by descent or purchase, does in fact pass an interest and a title from the moment such estate comes to the grantor." It is true, he subsequently states, that warranty has been regarded an essential feature in the doctrine ; yet we apprehend that general warranty is not necessary to create an estoppel. In the case before us, it seems very clear that *Weston* would be estopped, by the covenant in his deed, to claim the land against *Webster ;* and the tenant, holding subsequently under him, is privy in estate and equally bound by the estoppel. *Co. Lit.* 352, *a.* 4 *Com. Dig. Estoppel B.* As if *A* demises the manor of *D* by indenture for years, and afterwards purchases the manor, and sells it to *B,* the vendee shall be bound by the estoppel, and cannot say that *A* had not any thing in the manor at the time of the lease. 1 *Salk.* 276.

*Coke* puts a case where the father is bound by an estoppel and the son is not ; as if there be grandfather, father and son, and the father disseises the grandfather, and makes a feoffment in fee, and the grandfather dies, the father against his own feoffment shall not enter ; but if he dies his own son shall enter. *Co. Lit.* 265, *b.* The reason is, the son claims, not as heir to the father but to the grandfather, who was the disseisee, and last actually and rightfully

seised. And if the heir does not claim the land from him who made the estoppel, but by his own purchase, or by another ancestor, he shall not be bound ; although he derives his blood from the party to the estoppel. Sir *Wm. Jones,* 460, cited 4 *Com. Dig.* 80. In *Rawlin's case,* 4 *Co.* 52, *A* possessed of a house for 30 years, except a stable, of which *B* was possessed for two years, granted all his interest to *C,* and demised the stable to *B* for six years by indenture, after the end of the two years ; *C* redemises all to *A* for twenty one years paying rent, then *A* redemises the stable to *C* for ten years. It was resolved that the lease by *A* to *B* for six years, though he had nothing at the time, was good by conclusion by the indenture, and when *C* redemised all to *A,* then was the interest bound by this conclusion ; then when *A* redemises to *C* the stable, *C* is also concluded ; for all parties or privies in estate or interest are bound by the estoppel.

In *Varnum v. Abbot,* 12 *Mass.* 474, it was stated by *Jackson J.* that the levy of an execution on real estate, raised an estoppel against the judgment debtor, as much as if he had given a deed under hand and seal ; and yet in such a case he could be bound neither by covenant nor warranty.

The covenant in *Weston's* deed to *Webster* being one which runs with the land, the demandant, his assignee, may avail himself of it. *Weston,* by his deed and covenant, is estopped to make claim or title to the land ; and the tenant, claiming subsequently under *Weston,* is privy in estate, and bound by the estoppel.

*Judgment for the demandant.*